May it please the Court, James Hanlon for Appellant, San Francisco Bay Area Rapid Transit District. I am going to endeavor to reserve five minutes for rebuttal. Your Honors, may it please the Court, in this case the jury found that the appellee defendants knowingly submitted false information to be used in bid packages in an effort to obtain subcontracts for work on the BART San Francisco Airport extension in the late 1990s. The verdict was not a surprise. Among other evidence, the jury heard testimony from one of the co-conspirators, Virgilio Talao, a man of Filipino ancestry who testified that he acted as a front to allow the defendants to pose as disadvantaged business enterprises, or DBEs, which enhanced their ability to obtain the subcontracts. In total, the defendants thus obtained more than $12 million in subcontracts from which they made approximately $3.3 million in profits. By this lawsuit, BART sought disgorgement of those profits and other civil RICO damages. Yet, due to adverse summary judgment rulings in the district court, BART received a verdict of only $67,500 in civil penalties. Defendants left the district court having been found guilty of concocting a scheme to defraud BART, but with millions of dollars of unlawful profits still under possession. This result violated both California State law, unjust enrichment, and Federal RICO law. By this appeal, BART has been found guilty. You know, it may have been wrong on all sorts of scores. The nub of the problem to me seems to be, as Judge Olson noted, I mean, there's no actual damage to BART, and BART got what it needed to get, which is an undertaking by the primes to somehow come up with 23 percent minority enterprises, which it did. So that being the case, what, in effect, gives BART any sort of roving right to go after these folks? Judge Romer, you've put your finger on the heart of the summary judgment rulings in the district court and the main issue on this appeal. And the error that the district court committed is it brought the concept of damages, which controls in tort and controls in contracts, and moved it into unjust enrichment, which is an equitable remedy that is broader than either tort or contract. But unjust enrichment under California law also has its elements, doesn't it? It does, Your Honor. And it says that a person has got to be unjustly enriched at the expense of another, and there are some exceptions to that, but I'm having a tough time seeing even which exception this might fall under under unjust enrichment. Well, Your Honor, we now have the benefit of the San Bernardino v. Walsh case, which the district court did not have. Now the Walsh case is a bribery case where the county or the county, whoever, anyway, the municipality's employee was bribed. Yes, Your Honor. And this is also a bribery case here. But is there any evidence, was BART bribed? BART was not bribed. A private citizen was bribed. A private citizen was bribed. Yes. And we don't really have a clear trail that that bribery found its way in effect back to BART, do we? I believe we do, Judge McKeon. First, I want to circle back, I will touch on that point, but I want to circle back to Judge Smith's question about finding some sort of loss on BART's side as an element of unjust enrichment. And the Walsh court spoke directly to this, and this is at page 542 of the Walsh decision. This is, quote, the emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregards of the rights of another should be required to disgorge all profit, because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. Without this result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct. Well, sure. But, I mean, assuming that there's even a cause of action for unjust enrichment in California, as to which there's some question, as you know. But I don't know. It's still not a roving commission to go get people who have made profits in an infelicitous way to disgorge them. Well, Your Honor, I think that perhaps not as broadly stated as you just put it. But Walsh and case law in both New Jersey and New York, other states that, of course, follow the general principles of the restatement of restitution, are that when contractors or subcontractors endeavor to defraud a public agency, okay, they are required to disgorge the profits that they receive under those contracts. It does not, that rule does not necessarily apply in the world of private contracting. But Walsh and other states, Walsh, of course, California Supreme, California Appellate Court, and other states have found that if we're talking about public works contracts, if you endeavor to defraud a public agency, then you have to disgorge the profits that you receive under the contract. Back to Judge McEwen's question, is how do you get this particular fraud back to BART? Well, actually, the jury has already done that for us, Your Honor. Well, no, they did on a different line. Well, but the question here is whether there's injury to BART on the theories that you're espousing. Your Honor, again, under Walsh and under the 1959 California Supreme Court decision award against Taggart, which underlies Walsh and is a very fundamental statement of the law of restitution in California, if a party acts in conscious disregard of the rights of another, the plaintiff does not have to show damages like they would in tort or in contract. If I apply Walsh directly, it would seem to me that this joint venture should have been financially helping BART and BART violating a fiduciary relationship by employing the joint venture. If I apply the facts exactly the same as in Walsh, because in Walsh, the people were in fact paying the government agent, and they got things that they shouldn't have got, and the government agent had a fiduciary duty to the government, and they did a bad, or they were not allowed, so they disgorged the profit. I hope you're not suggesting BART violated its fiduciary relationship here, are you? I'm not, Your Honor. But you're then suggesting that Walsh applies, where it's totally different facts under this circumstance. Now I can't see at all. Well, I do appreciate that. Thank you. I was being blinded by the light. Judge Smith, we disagree with the appellees' characterization of Walsh. They try to present Walsh as being based on a fiduciary duty held by the public official who was bribed in that case. Well, that makes it very easy when that's the way the Court talks. Well, but respectfully, Your Honor, I think if there's a careful reading of Walsh, it is not based on a fiduciary duty. And I have the case right here because I knew this was the most important case in this appeal. And at page 543, after a long discussion about the general principles of unjust enrichment in California and Ward against Haggard and recitation of the rule that conscious disregards of the rights of another lead to disgorgement of profits, the Court says disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty. Particularly applicable. It's further support. The Walsh case is not based on a fiduciary duty violation. It's based on a deliberate attempt to engage in an unlawful scheme to obtain a public works contract. That is exactly our situation here. The jury found that the defendant, Appelese, submitted false information. In other words, there was fraud in the inducement of the 120 and 130 contracts. And under Walsh, properly read, that gives rise to a claim for unjust enrichment, which leads to disgorgement of the profits. That's your unjust enrichment. And the unjust enrichment in the end is simply, in effect, the false certification. Is that correct? I mean, is that what triggers it? I mean, that's what's so unclear here. It's not that you indicate to some degree it's the bribe, and then also the certification. So what is the foundation of the scheme? Sure. The foundation for the scheme, Your Honor, is, and Mr. Tlau testified about this at length at trial, and it was, of course, also in his declaration that was submitted in opposition to the summary judgment motion, Mr. Tlau said that he entered into a scheme with Spencer, with the Spencer defendants, at their initiative, whereby he represented himself to the prime contractors and the BART at BART subcontractor meetings as being the controlling entity in a joint venture that would then qualify It's, in effect, the underlying facts for the certification. Yes. As the minority or the disadvantaged contractor. The Spencer defendants, the appellees, joined with Tlau to form a sham joint venture that they actively represented as qualifying for DBE status in the bid process. Is this illegal? Is this a criminal violation in California? Your Honor. Of public contracting? I'm not qualified to speak to that at this time, Your Honor. I do know that Mr. Tlau faced criminal prosecution on related behavior. I'm not, I can't speak to the Spencer defendants. I mean, I guess the reason I'm asking, it's like maybe where Judge Reimer started. There's no doubt that what happened here was wrong. The question is, is BART the right one to recover, and under, if so, under what theory? Because, you know, there certainly can be wrongs for which the civil law does not provide you a remedy. Sure. And that's why I ask on the criminal. There could be restitution if there's a claim about restitution. But I'm just having trouble fitting it in. Sure. To, you know, even, even, let me ask you another question. Under the False Claims Act, what is the falsity of the claim? The jury found, and this was BART's theory at trial, was that the defendants had presented false information for the purpose of obtaining the 120 and 130 contracts. And under the Fassberg case, the California appellate case, once the jury finds that that occurred, then each subsequent request for payment under that contaminated contract is itself a CFCA violation. That was the basis of the jury verdict in this case. And the false information was what was presented to the prime? It was what was presented to the prime and what was presented to BART in the bid packages. The bid packages identified SLG, BMC, the sham joint venture, as a DBE entity. It was listed as the DBE entity that was going to perform particular work in the various categories of the contracts. These contracts were design-build contracts. So the contractor is going to be designing the station or the track or whatever. So BART did not require them to say, okay, in the mechanical work, we're going to have the DBEs perform 27 percent of the work. What they said was, we want a 23 percent goal overall, and for each category, we want you to list the DBEs who will be doing the work in those categories, and we expect you to meet the overall goal or show us that you endeavored in good faith to do so. Which happened. Factually, yes. Factually, BART did meet its DBE goals, despite the fact that they were there. Actually, there's nothing to show that BART cared exactly which subcontractor was DBE-qualified or not. I disagree with that, with that, Judge Reimer, and here's why. BART required in the bid packages that all of the DBEs be specifically listed. And indeed, on some of the other ones. And could be substituted. And in fact, in this case, there was a substitution. Well, there was a substitution once the work was well underway, and yes, Spencer was allowed to take over the work after Talal lost his contractor's license. But the work was done. The work was completed. And that didn't have any consequence, financial, concrete financial consequence so far as the DBE qualification is concerned. That's correct, Your Honor. BART cannot show, and the jury found that BART was not damaged. I can't represent to this Court that BART suffered any consequences with FTA as a result of the defendant's unlawful scheme. What we're here, though, for is under California unjust enrichment law, whether or not the public entity is damaged, if you endeavor to obtain a public contract by a fraudulent scheme, you are required to disgorge profits. That's California public policy. What case is your best case for that proposition? What is my best case? Walsh. But there was damage there. You say that's the problem. Ah. Well, this is another argument that I think that, again, a careful reading of Walsh dispels this. And this is at the end of page 541 in the Walsh opinion. You'll see the Court says that, yes, there were damages in Walsh because some of the contracts were overbid or whatever. They weren't competitively bid. I don't believe in that case. But the appellate court says that the superior court did not base its decision on actual damages to the government. Instead, the Court applied the principle of unjust enrichment to require Amaze Walsh to disgorge the ill-gotten gains they received in the bribery scheme. The emphasis in the superior court in Walsh was on the ill-gotten gains received by the defendants, not on any damages suffered by the plaintiff. And that is the principle. That's exactly the holding of Walsh, that a government entity does not need to show actual damages. All it needs to show is that someone acted with conscious disregard of its rights, i.e., fraud or a similar type of scheme, to obtain a public works contract. Once the agency makes that showing under California public policy, as stated in Walsh and other states, we cite the county of Essex case, which went all the way to the New Jersey Supreme Court on this point, the defendants are required to disgorge their profits. It's a way of the State disincentivizing efforts to defraud public agencies. And the rule might not apply in private contracts, as I said, but it does apply in this public context. Perhaps we should shift. Actually, I only have four minutes left, but I do want to speak for one minute about the RICO claim, because it does have other grounds for reversal of the district court's ruling on RICO. And what I'm going to speak to primarily is there is clear precedent from two Southern District of New York cases, the City Source case and the Hellenic Lines case, that when bribes are paid under a contract, those bribes are cognizable RICO damages, even if the person who's receiving the performance of the contract gets everything that they paid for and indeed got a good bargain. The courts there reason that under RICO, you're damaged if you make payments that are not used to perform work for your behalf and those payments go to a criminal organization. That is exactly what bribes do. They pass or are alleged that they pass, that the payments pass from the prime to Spencer, to Talal, in the amount of approximately $200,000. Under City Source and Hellenic Lines, those are cognizable RICO damages. And that's a further basis for overturning the summary judgment ruling on RICO. I'm going to reserve my remaining 3 minutes and 30 seconds if the Court doesn't have any further questions. Mr. McInerny. McInerny. May it please the Court, Tim McInerny for the defendants, and I will also reserve time on the cross-appeal. I want to immediately address the unjust enrichment claim that we've been just discussing here. I think BART mischaracterizes the Walsh case on several grounds, but I don't even think we need to get into it because, unfortunately, neither party cited, but there is a case from June of last year that addresses the Walsh case on point. It's Peterson-Russelco Partnerships, 164 Calab Fourth, 1583. It goes in-depth in discussing Walsh, and it brings up the exact points that this Court has brought up. Specifically, it starts out by quoting, it talks about there's no equitable reason for invoking restitution when the plaintiff gets the exchange they expected. Okay. So there's a – there's, to a certain extent, a split among the California appellate courts on the issue. Of whether it exists or not, I would agree. But I don't think there's any split or disagreement now that Walsh is not – and this case talks about it. Walsh is not standing for the proposition, what BART just told you, that you don't need damages. BART has conceded that there was no damages in this case. They didn't suffer actual damage. They got what they expected. They are now trying to use Walsh to tell this Court, well, you don't need damages. We can still get restitution. Well, how do you – why, you know, you look at Walsh and citing to Ward v. Taggart, here's the statement. The public policy of this State does not permit one to take advantage of his own wrong, regardless of whether the other party suffers actual damages. That's a pretty clear statement. I would agree. And I'll get into the Ward and Taggart, but I think the case – Why don't you get into this now? Like, why – if you read that, you say it totally contradicts what you just said, which is that you need actual damages. Right. If you look at the Ward-Taggart case, it's an old case, and it relies on an old California civil code that talks about the person being a trustee for the damages. While I agree it uses the term unjust enrichment, the facts of the case don't come anywhere applicable to what we're talking about. And clearly in Ward, that case relied on the California Code of Civil Procedure that talks about the wrongdoer being the trustee for the money. And that's what they relied on. Under the Selco partnership case, though, it specifically says that the St. Walsh – Walsh's holding does not support the plaintiff's assertion they need not allege any actual injury to bring an unjust enrichment claim. Specifically, they quoted – the quote Bart uses in part that say the ill-gotten gains, the Selco partnership says that's mere dicta, because Walsh does not stand for the proposition you do not need actual damages. That is any – Can this be certified to the California Supreme Court? Because now we kind of have dicta on dicta. We have got old cases. We have got new cases. I don't think so. I don't think so. Because I think Walsh, on the face of Walsh, on page 541, they specifically talk about the county lost millions of dollars. Selco partnership says the county in Walsh lost money. They had actual damages. So Walsh is not an opposite. No, but the difficulty in Walsh, they say usually that's what happens. I mean, and when we think of unjust enrichment, we usually think the plaintiff actually is in the hole. Correct. In some way. But Walsh has this whole discussion that that's the typical situation, but that's not the only situation for unjust enrichment. So do we just sort of put that in the dicta box and keep moving? What are we supposed to do with it? I think you read Walsh in the whole, and it talks about the fiduciary duty, which there is support for. But I think you have to get out of the box first to get over Bart's hurdle of do you have damages or not. Do you have actual damages? Assuming for a fact Walsh didn't have actual damages, and the Selco partnership case didn't say Walsh had actual damages, then I think we're talking about what Justice Smith said about regarding, well, in the restatement, we do have these exceptional cases, the fiduciary duty, the loss of property, where there are some exceptional circumstances. And Justice Ilston, in her order, pointed that out. Bart doesn't argue either one of them here. They're not arguing. What they're trying to do is force you to say Walsh stands for the proposition you don't need actual damages, and clearly that is not what Walsh says on its face and doesn't – and it's not addressed in Selco partnerships. Either way. So I don't think we – there is no conflict or anything. Bart can't get over the actual damage aspect of it. The second aspect they just touched on is RICO, which is even further needed concrete injury. Bart bootstraps the RICO claim on the issue of, well, California law allows us unjust enrichment, which I think we've addressed. What I want to move on to now, I want to move on to Spencer's claim on the statute of limitations. And what we have here is an issue where the certain facts are undisputed, that they're critical for looking at the statute of limitations claim. First, we have the jury's findings. Was that issue raised in the district court? Yes, it was raised. It was raised continually during trial and in the motion. In the Rule 59e motion? Yes. We brought up both the sufficiency of the evidence on all the issues. I didn't say the sufficiency of the evidence. It's the statute of limitations. And we brought up the issue of the claim, the timing of it. Well, if you would really look at 59e, because this is some important to me, I read the district court's motion for summary judgment decision, and I would admit that you've raised it in the summary judgment decision. But then you went to trial on whether there was a statute and the statute of limitations the district court found was an issue of fact. And then you went to trial. Then after the trial, you raised another motion, which was your 59e motion. In my reading of your 59e motion, you didn't bring back up the statute of limitations at all. You argued a sufficiency of the evidence only. So how do I get to now your motion for summary judgment issue again? I would disagree. I think we brought up, as you point out, we brought up at the beginning and in our Rule 50 motion this issue of ---- Where in this motion did you bring it up? Point to the point in there. Because I read it very carefully, because I was going with you to begin with. But then I had to get into the pleadings and had to get into what you really did and show me in your 59e motion where you really say the statute of limitations is wrong as to what the district court did, rather than just it being a subject of jury instructions or sufficiency of evidence. Show me in the record if you want. I mean, I've researched this pretty well, so I'm having a tough time. I understand that. I do not have the full text of the motion in front of me. But it was we brought up the sufficiency of the evidence obviously. We also brought up this issue that we've argued in our brief extensively, the issue of is it one claim, is the statute of limitations one claim or is it this recurring claim that's brought up throughout. And what our position was and still is at this point is we have a jury finding at this point that BART knew. They knew before November 1st of 2001. We have another jury finding of fact that the defendants never concealed anything. Never. And then we have a further finding of fact that there was no damages. This brings up a very unique case. There's no other case like this that I could find. BART has a fraud. You request, you ask to BART. BART has a fraud in the inducement case. That's what it is. You mentioned, Judge Muin, it's not a false certification case. It's always been a false fraud in the inducement case. So the issue is when does that arise? What are we talking about? I'm lost. Are we now talking about an unjust enrichment or RICO theory? Are we talking about the False Claims Act? We're talking about the False Claims Act. Well, that's a false claim. Right. Well, a false claim is fraud in the inducement. But why I bring it up is because it defines. I mean. Well, when does it accrue? That's the issue I'm addressing. When does the false claim accrue? And you have to look at what type of a case it is. BART arguing that each and every payment application was a false claim. Yes. Yeah. And that's what they usually are. Usually. You're right. I would agree. The typical overbilling case or not providing you what's set forth on the payment application, BART's not arguing that. BART's acknowledging that the payment apps in and of themselves were not false. What they say, they were tainted with the underlying fraud in the inducement, that somehow Spencer induced the general contractors to give him a contract and list him, and that then the general contractors induced BART. Here's the important part. The accrual, as Debro case deals with, the accrual does not need each and every element of the cause of action. Was BART on inquiry notice? Would a reasonable person know? The jury said yes. What BART wants this Court to do is say we want each and every claim or payment application. They're mixing apples and oranges with when does, if we were in State court, when does a cause of action accrue versus when does the each and every. This is a lot like the Federal False Claims Act. I mean, it's basically the same principle. And there, if you have some kind of false certification, you know, you're a medical equipment provider, this or that, and then you keep sending in your invoices, each one of those is a false claim because it's predicated. I mean, your ability to send it in is because you've got the certification. Why isn't that the same here? It's different because under the certification cases we've seen, the Fosberg or the Allison-Engin cases, the government's not getting what they wanted. That's the big distinction. I would agree that if we were overbilling, each and every claim is wrong. But the difference in our case is there's nothing wrong about the claim. There's no case like that. All the other subcontractor cases. I mean, in a way, you guys got out of this, you know, by the skin of your teeth, so to speak, for what was basically defrauding the government. I mean, there is no DBE. So I'm having some trouble wrapping myself around the fact that you now say there's no fraud because, you know, they got what they paid for. That's true, but they also needed to have minority contractors or disadvantaged contractors. And they got it. That will address our substantial evidence. Let me address that directly. If Bart is telling this Court that the only reason that they were defrauded was because we held ourselves out as a DBE and we weren't, and there was this bribery, et cetera, there's only one person, one entity in this case that makes that determination, and that's Bart. How can Bart be defrauded? They are the ones that get to stand up and say whether an entity, a joint venture, is a DBE or not. Not us. We don't get to make that decision. If we wanted to, the Spencer parties would have needed to fill out the forms we didn't do, the Schedule A, the Schedule B, all that form work we needed to do to be declared. But the party that makes that decision is Bart. It would be like me coming up to this panel and saying, I'm a member of your panel. You're the ones that make that decision. Bart is the only person. We could have affidavits, billboards and signs that say we're a DBE. Bart makes that decision. It's hard to defraud the person. Ginsburg. But you just made a false statement when you said that to me. But is it false if the person were to say you're a member of the panel? Yes. If I say I'm a DBE and I'm not? And then do you rely on it? But if I'm the one that you But where in the statute does it talk about the reliance? It talks about the false claim they had a natural tendency to influence the agency or is capable. The false claim, the establishment of the materiality of the false statement is the importance, not whether the government actually relied. Well, I think we use the term reliance. That's Holmes v. General Dynamics. Yeah. They use the term materiality in the false claim. And I think Judge Ilston pointed out the materiality as far as the causation is a little bit lower than the RICO proximate causation. But materiality still needs to show you have a natural tendency to influence a decision. Here in this record, we have before, during and after award. Bart didn't do anything differently. They didn't do anything differently when they awarded the contracts based on one piece of paper, a general contractor saying we'll commit to sometime in the future making your DBE goals. The Bart didn't rely on anything else. And then afterwards, when we came to Bart and went to the State of California, went to all the general contractors and said the contracts are now going to be performed by BMC, Bart didn't do anything differently. They had all the options to say if DBE status for that particular work was material, had a tendency to influence us, they could have done a million different things. They could have terminated the contractor. They could have required the general contractor to hire a DBE. Well, under your theory, if somebody is defrauding you and you don't know it, you somehow have some obligation to abort the fraud. I mean, that's what the whole thing is about. I didn't know that your clients were doing these shenanigans with this DBE program. Well, according to the jury, they knew as of the latest, November 1 of 2001, and nothing was being the important other point, the jury, that shouldn't be lost is this fraud. The jury said before that time Bart or the defendants were doing nothing to conceal the fraud. They were doing nothing to conceal the fraud, which is important. So if Bart knows everything at a certain point, that should trigger the cause of action. I'm a little worried about this insufficiency of evidence of materiality again as to whether you properly presented this to the district court. As I understand it, you argued that the court had improperly instructed the jury on the materiality of the evidence. This argument you're making to me is different than that. No. I think we're making the same thing. It's the argument. I mean, if we're talking really, as I understood, to the district court, the district court was going on whether the instruction on the element of materiality was important and that that was your argument. This argument you're making now is a little bit different than that. We argued the totality of it. We argued from day one that Bart never presented it. I mean, I looked at your 59, your motions made with your 59E. So again, I'm focusing on what you said to the district court and what motions you made, and I guess I'm trying to figure out how you get to this argument based on what motions you made. Our argument on this insubstantial evidence was, is twofold here and below. One is that there was this no materiality, no reliance. The other aspect was on this, you know, what we have in front of us, some unique case where we have a fraud in the inducement of a subcontractor, no actual damages, and the claims are accurate. Bart's not disagreeing with that. I just don't see that. I don't see that argument being made anywhere, including to us, except in reply. The issue that the claims themselves, we argued that there was no claim in our opening brief and in our reply, that the claims that were alleged to be made were not false, that there was no reliance on those claims. We had a twofold and always kept a twofold argument that there's two aspects of the insufficient evidence. Let me try to rephrase this thing totally differently. You've got a really good district judge who has lived with this case all the way through, granted a summary judgment on some of the claims, thought the False Claims Act claim should go to the jury, did, and carefully, meticulously went through the arguments. Where did she goof? I think she goofed in the statute of limitations presenting that, and I think she also You can't goof if it's not raised. Well, I – it was raised in the entirety. That this – that this – because the way it came up, let me just – I think it's insightful the way it came up. The night before we were arguing the statute of limitations, and we had started arguing the issue of statute of limitations, suffice it to say, neither Bart nor the defendants could agree on what it was. Judge Ilston, who I agree is brilliant, went in that evening and came back that day that we were going to argue to the jury and said, here's the instruction, this is the instruction you will use. That's how it came about. But the record was we were fiercely arguing it with Bart on what the statute of limitations is. It's a different argument what she did wrong also. I would say on the face of this claim, look at – we cite Allison Injun. Bart – and Judge Ilston gets around this. She addresses it in her order on our 50B that says, hey, listen, we had testimony from Bruce Bonar. There was payment apps. It's a great example. How many? If under Allison Injun or if this Court has to count claims, don't you need to know exactly how many payment apps the Spencer parties put into evidence or how many payment apps the general contractor put in? We basically said there were enough of them for the jury to be able to infer that the rest of them would have been the same. I mean, that's sort of SOP. Except the problem was there was no payment apps. There's no – Bart can't argue – Bart doesn't even distinguish this. There was no payment apps from the defendants. Not one. There was no payment apps from Tudor, Saliba. Of course there wouldn't be because the apps go to the prime and are passed through. Right. But Allison Injun and the other cases, the Bornstein case, requires that nexus, Your Honor. It requires – they can't – Bart just can't go up and say, I think you submitted a payment app. If we want to count penalties, you need to know how many apps we have. This is the distinction, like in Bornstein. You – the FCA punishes the act. It punishes the act. Okay? That's what we get to. And we don't have any of that evidence. This I might like to just reserve for me. You're way out of time. Okay. Okay. So Mr. – Mr. Hanlon. Thank you, Your Honor. It's clear to the Court there's a lot of issues in this case. I'm glad to address in the remaining three-and-a-half minutes what the Court thinks is most important. I do want to circle back to the Walsh case, because, again, that is – that is the most important issue in this case, and I direct the Court to the last paragraph on page 541, because this is where the court of appeal tells us what it is deciding and on what grounds. Well, you know, how – you never – you obviously didn't mention Peterson. How do you account for it? I mean, it just totally puts Walsh – your reading of Walsh in a teapot. Well, Your Honor, well, first of all, Peterson – we have 28 jail letters in this court. Peterson's not cited in any of the briefs. It was never raised in the 28 jail letters. Well, look, we found that, all right? And we have to follow the law. Sure. So the question is, how do you deal with Peterson? Peterson is a misreading of Walsh. That is how I deal with Peterson. And I think if this Court carefully reads Walsh, and I – again, I direct you to the last paragraph on page 541 in the reporter, Walsh is not based on a damages finding. Indeed, here's – here's a foundational fact that proves that. The plaintiffs in Walsh did not get the amount of their damages as unjust enrichment. They got the profits as the unjust enrichment. Damages and unjust enrichment were completely disconnected in Walsh. Similarly, Walsh is not premised on a – on a breach of fiduciary duty. The Court makes both of those points very clear in its opinion. And to the extent that Peterson states otherwise, I think Peterson misreads Walsh. And your – I believe, Judge Reimer, it was you who asked about certifying this to the California Supreme Court. It was – I was going to – Judge McKeown beat me to the pulp. Okay. Well, whichever of Your Honors raised the issue. This is an important question of California law, whether you have to show damages to – to get unjust enrichment. And to the extent that this Court thinks that – that Walsh does not read as we say it reads, and to me it's just – it's plain, but I – Well, if you read the restatement, you – you can't get to where you're getting without having somebody have been really unjustly enriched with damages. And if you read the restatement, there are two exceptions, neither of which your client can fall into. So you're really suggesting that under California law, there's another exception that's in Walsh that has now been, if you will, not only distinguished, but limited by Peterson. And I guess I'm trying to figure out, based on the state of the law that's in front of us, without going to the California Court of Appeals, Supreme Court, to find out what we have to do, I guess you're out. Is that what we're really saying? I just – respectfully, Judge Smith, I disagree. I actually think the restatement does support our position. The restatement's quoted in Walsh. It's – Well, but the restatement doesn't talk about anything but a fiduciary relationship or wrongfully disposing of a property or another and making a profit thereby. Well, Your Honor, restatement restitution, section 1, comment E, direct quote, in Walsh, a benefit has been received by – where a benefit has been received by the defendant, the plaintiff has not suffered a corresponding loss or in some cases any loss, but nevertheless, the enrichment of the defendant would be unjust. The defendant may be under a duty to give to the plaintiff the amount by which the defendant has been enriched. Now, I realize there are examples in the restatement such as breach of fiduciary duty. Respectfully, both California and other states, New Jersey, New York, have found that such an example is where a private contractor endeavors to obtain a public contract by unlawful means. And that is exactly what happened here. Let me ask you one last question because I usually ask these. You really are arguing that public contracts obtained through collusive bidding are void against public policy. Have you ever made that argument in the district court? No, Your Honor. I don't – well, that argument was made, I believe, only in the following respect in the district court, and it had to do with the claim for attorneys' fees that we've not much to testify. Have you not then waived this? No, Your Honor. That point was raised when the defendants asked for attorneys' fees. The – did argue that because the contracts were obtained through an unlawful fraudulent scheme, the contracts were void under California law. And you say that that's not where we're going now. This is the big issue for you right now. Coming up in an attorneys' fees issue, I didn't find any place in front of the poor old district court, which I also think is brilliant, where she ever got a chance to look at what you're now arguing to me. Your Honor, with respect, I don't think – I don't think our argument is premised on the contracts being void. Our argument is that the contracts existed, there was performance, there was payment. The parties are all square in every respect on that point, Your Honor. Our argument is that under unjust enrichment law, because they obtained the contract through an unlawful scheme, they are required to disgorge profits under Walsh, under Ward v. Taggart, and under the restatement restitution as applied in other States. That's our argument. I'm out of time, but if the Court has any other questions, including on the cross-appeal issues, I'm glad to address them. Okay. I don't disagree. All right. Thank you, counsel. We have no other questions, and the matter just argued will be submitted.
judges: Rymer, McKeown, Smith M.